DENISTON v. WEBB.

4-9076                                          226 S. W. 2d 809

Opinion delivered February 13, 1950.

A. D. Chavis, for appellant.

John E. Hooker, for appellee.

GRIFFIN SMITH, Chief Justice.   Robert Deniston, who was plaintiff below, appeals from the Court's finding that he was not entitled to an undivided half interest in lands within the south half of block twenty-seven, etc.

When the S. Geisreiter property adjoining Pine Bluff was platted as a subdivision, a part then thought to be unimportant was disregarded because it was cut by gulleys, ravines, and other malformations to such an extent as to render it of little value for residential or commercial purposes.   Therefore, says the complaint, "it was left unplotted—was thrown away, so to speak—and not put on the tax assessment rolls until recently."

Because ownership of the Geisreiter lands was nonresident, the estate was represented locally by Frank W. Berry.   R. B. Webb, for a recited consideration of

$25.00, procured from the owner, through Berry, a quit-claim deed dated August 2, 1948. The conveyance was to Felton Webb, who is R. B.'s son.[1]

Appellant's claim rests upon the dealings he alleges were had with Webb, beginning in the spring of 1948 when Webb approached him to borrow $25 for use in buying the land. At that time each thought that title was in the State. Appellant refused to make the loan until something more definite as to the title could be ascertained; whereupon appellee, after a visit to the Land Office, reported that there had not been a tax forfeiture. Appellant then informed Webb that he would make further investigations in an effort to find "how and where they might get a deed".

In testifying to his part in the transaction, Berry said that "some time last Spring" Webb had asked him if it would be possible to procure a deed. He thought the conversation occurred "about February". Presumptively Berry communicated with his principal, for on July 20th Webb paid $20, and later took care of the balance. Although Berry says he told Webb the land was too rough for *any* use, the purchaser industriously contrived a pile-supported building for a storehouse, thereby enhancing the value of the realty by several hundred dollars.

Appellant thinks that Webb impliedly acquiesced in his (appellant's) suggestion that a second survey be made. This occurred after the two had discussed a survey that Webb was familiar with. Appellant at that time thought the drawing was worthless, and that it would give way to a survey by a competent man whom appellant paid.

We agree with counsel for appellant that the case, as developed, became factual, and that the only question is, On which side does the evidence preponderate?

Clearly, the Chancellor was correct. Appellant is almost alone in asserting that the negotiations were such as to create a common enterprise. The element of

[1] All references to "Webb", or "appellee" are to R. B. except when otherwise shown.

time is highly persuasive. It discloses independent activities by appellee as early as February and March when appellant was not known in the deal.

Affirmed.